UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISON

| | | |
|---|---|---|
| COKER CHRISTOPHER | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | C.A. NO. 4:15-CV-700-O |
| | § | |
| OIL FIELD EQUIPMENT RENTAL, | § | |
| LLC, and NANCY FULLER | § | |
| | § | |
|    Defendants. | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS
MOTION TO COMPEL DISCOVERY RESPONSES TO PLAINTIFF'S
REQUESTS FOR PRODUCTION FROM DEFENDANT
OILFIELD EQUIPMENT RENTAL, LLC**

i

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ............................................................................................................. 2

II. ARGUMENT .................................................................................................................... 3

   A. LEGAL STANDARD. ................................................................................................... 3

   B. DEFENDANT FAILED TO RESPOND TO NUMEROUS REQUESTS FOR PRODUCTION. ................ 3

      1. *Documents from the United States Department of Labor and Other Government Agencies (Request 19).* ............................................................................................ 4

      2. *Documents Relevant to Defendant's Investment in its Flow Testing Operations (Requests 21, 25, and 27).* ..................................................................................... 5

      3. *Defendant's Contracts with the Oil and Gas Companies for Whom Plaintiff Performed Work (Request 23).* ............................................................................. 7

      4. *Policies and Procedures Applicable to Defendant's Flow Testers (Requests 7, 8, 9).* .... 9

      5. *Job Safety Analysis Reports Plaintiff Completed While on the Job (Request 15).* ....... 11

      6. *Communications between Plaintiff and Defendant (Request 28).* ............................... 12

III. PLAINTIFF IS ENTITLED TO ITS FEES AND COSTS FOR PURSUING THIS MOTION ............................................................................................................. 13

IV. CONCLUSION .............................................................................................................. 14

i

## TABLE OF AUTHORITIES

**PAGE**

**CASES:**

*Bobbit v. Broadband Interactive, Inc.*
  2013 WL 5720329 (M.D. Fl. Oct. 21, 2013) ........................................................................... 6

*Brock v. Mr. W Fireworks, Inc.*
  814 F.2d 1042 (5th Cir. 1987) ............................................................................................... 5

*Broussard v. L.H. Bossier, Inc.*
  789 F.2d 1158 (5th Cir. 1986) ........................................................................................... 2, 7

*Coronado v. D. N.W. Houston, Inc.*
  No. CIV.A. H-13-2179, 2014 WL 2779548 (S.D. Tex. June 19, 2014) ................................ 2

*Coughlin v. Lee*
  946 F.2d 1152 (5th Cir. 1991) ............................................................................................... 3

*Dole v. Snell*
  875 F.2d 802 (10th Cir. 1989) ............................................................................................... 6

*Hopkins v. Cornerstone Am.*
  545 F.3d 338 (5th Cir. 2008) ................................................................................................ 8

*Real v. Driscoll Strawberry Assocs., Inc.*
  603 F.2d 748 (9th Cir. 1979) ................................................................................................ 6

*Scantland v. Jeffry Knight, Inc.*
  721 F.3d 1308 (11th Cir. 2013) ............................................................................................ 9

*Thibault v. Bellsouth Telecommunications, Inc.*
  612 F.3d 843, 846 (5th Cir. 2010) ............................................................................ 2, 5, 7, 10

*Trahan v. Honghua Am., LLC*
  No. CIV.A. H-11-2271, 2013 WL 2617894 (S.D. Tex. June 10, 2013) ................................ 8

**FEDERAL RULES:**

Fed. R. Civ . P. 37(a)(3)(B)(iii)-(iv) ............................................................................................... 2

Fed. R. Civ. P. 26(b)(1) ................................................................................................................ 2

Fed. R. Civ. P. 26(b)(1)A ............................................................................................................. 2

Fed. R. Civ. P. 37(a)(4) ................................................................................................................ 2

Fed. R. Civ. P. 37(a)(5)(A) ......................................................................................................... 12

COMES NOW, Plaintiff Christopher Coker ("Plaintiff") and files his Brief in Support of his Motion to Compel Discovery Reponses to Plaintiff's First Request for Production of Documents to Defendant Oilfield Equipment Rental, LLC ("Defendant" or "OER"). Plaintiff served thirty-six Requests for Production on Defendant pursuant to Federal Rule of Civil Procedure 37. *See* Exhibit A (Plaintiff's Requests for Production) (App. 01 – App. 08)

In response, Defendant produced only two pages[1] of documents. *See* Exhibit B (Defendant's answers to Requests for Production) (App. 09 – App. 24). Plaintiff is aware that several responsive, relevant, non-privileged documents exist that Defendant has not produced. The parties met and conferred on December 9, 2015. The parties were unable to resolve the issues raised in this Motion, and Defendant explicitly stated that it would not produce certain responsive documents. Plaintiff respectfully requests the Court to compel production of the documents within 14 days of the Court's ruling on this Motion.

Plaintiff has been injured because Defendants' failure to respond necessitated this Motion to Compel. Plaintiff has spent time seeking to compel what Defendant should have provided pursuant to the Federal Rules. Therefore, Plaintiff also seeks reimbursement for the fees it incurred in preparing and pursuing this Motion to Compel. *See Agnew v. FTS International Servs.*, Case No. 4:15-cv-0052-O (Northern District of Texas 2015), Dkt. 68 (March 16, 2015 docket entry ordering reimbursement of attorney fees incurred on motion to compel discovery responses in FLSA case) (O'Connor. J.).

---

[1] Prior to being served Plaintiff's formal discovery requests, Defendant produced 85 pages of documents consisting of Plaintiff's 76 weekly timesheets and 9 pages from his personnel file. The documents requested in Plaintiff's requests for production go far beyond these limited documents.

1

# I. INTRODUCTION

Plaintiff Christopher Coker worked for Defendant OER as a flow tester from March 2012 to January 2013. Defendant employs dozens of flow testers like Plaintiff at various oil and gas wells throughout Texas. Flow testers are manual laborers whose primary duty is to monitor and measure the flow of oil and gas pumped out of the wells. Defendant classified Plaintiff as an independent contractor, and as such, did not pay him overtime wages for the hours he worked over forty in a work week. Plaintiff routinely worked over 70 hours per week. The operative question in this case is whether the Plaintiff was misclassified. Plaintiff alleges that under the Fair Labor Standards Act ("FLSA"), he should have been classified as an employee. *See* Dkt. 1 (Plaintiff's Complaint). If Plaintiff is correct, he is entitled to a significant amount of back wages for unpaid overtime.

To determine if Plaintiff is an employee under the FLSA, the Fifth Circuit applies the "economic realities" test. The test examines: (1) the degree of control exercised by the purported employer; (2) the extent of the investments of the alleged employee and the alleged employer; (3) the degree to which the worker's opportunity for profit and loss is determined by the purported employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationships. *Thibault v. Bellsouth Telecommunications, Inc.*, 612 F.3d 843, 846 (5th Cir. 2010); *see also, Coronado v. D. N.W. Houston, Inc.*, No. CIV.A. H-13-2179, 2014 WL 2779548, at *2 (S.D. Tex. June 19, 2014) ("The FLSA issue turns on the economic realities test."). The Fifth Circuit has found additional factors relevant, including "whether the work usually is done under the direction of a supervisor", "whether the employer or the individual in question furnishes the equipment used at the place of work", and "whether the work is an

integral part of the business of the employer . . . ." *Broussard v. L.H. Bossier, Inc*., 789 F.2d 1158, 1160 (5th Cir. 1986).

Plaintiff has tailored his requests for production to conform to the economic realities test, but has been met with resistance by Defendant in responding to the requests.

## II.  ARGUMENT

### A. Legal Standard.

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevancy is broadly construed: "information is relevant if it encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (quotations omitted). Discovery is relevant if it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1)A.

Under Federal Rule of Civil Procedure 37, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" when a party fails to respond to an interrogatory or produce requested documents. Fed. R. Civ . P. 37(a)(3)(B)(iii)-(iv). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

### B. Defendant Failed to Respond to Numerous Requests For Production.

For the ease of the Court's review, the unanswered requests are grouped into the following six categories: (1) Documents from the United States Department of Labor and other government agencies; (2) Documents relevant to Defendant's investment in its flow testing operations; (3) Contracts with Defendant's customers; (4) Policies and procedures that applied to

3

Plaintiff and other flow testers; (3) Job safety analysis reports Plaintiff was required to complete on the job; and (6) Communications between Plaintiff and Defendant.

1. **Documents from the United States Department of Labor and Other Government Agencies (Request 19).**

    Request for Production No. 19 requests:

    **All documents sent to or received from the Department of Labor or any other governmental agency or body (state, federal, local or otherwise), regarding payment of wages, compliance with the Fair Labor Standards Act, or classification of your workers as employees or independent contractors from January 1, 2004 until the present. This includes any workers compensation commission.**

Defendant responded that there are "none." *See* Exhibit B at page 9 (App. 09 – App. 24).

However, Plaintiff obtained evidence that the U.S. Department of Labor investigated and penalized Defendant for FLSA violations in September 2011. *See* Exhibit C, U.S. Department of Labor Investigation Report, Bates Nos. CC_OER 000021-23.[2] (App. 25 – App. 27). Defendant should have a copy of this report and other documentation regarding the Department of Labor investigation. Therefore, Defendant provided an incomplete and false response.

When the Department of Labor investigates a company, it provides various manuals, policies, and other resources that educate the company on how to comply with the FLSA. These documents are relevant to show Defendant's knowledge of the FLSA, whether Defendant willfully violated the FLSA when it classified Plaintiff as an independent contractor, and to rebut Defendant's affirmative defense that it acted in "good faith." *See* Dkt. 1, Complaint at ¶ 36 (alleging willfulness); Dkt. 6, Answer at p. 2 (alleging good faith). If Defendant received guidance from the Department of Labor regarding complying with the FLSA during the September 2011 investigation, but then violated the FLSA when it hired Plaintiff in March 2012 (a mere 6 months later), that is potentially strong evidence that the violation was willful and not

---

[2] Plaintiff obtained this report pursuant to a FOIA request to the U.S. Department of Labor.

in good faith. Plaintiff is entitled to this relevant evidence, and any documents regarding FLSA, wage and hour, and misclassification investigations or complaints with other government agencies (such as the Texas Workforce Commission).

Because Defendant provided an incomplete and false answer, the Court should order Defendant to perform a thorough search of its records and produce any documents responsive to Request for Production 19. Plaintiff is entitled to a complete and accurate response. The Court should also award Plaintiff its fees and costs in bringing this Motion.

2. **<u>Documents Relevant to Defendant's Investment in its Flow Testing Operations (Requests 21, 25, and 27).</u>**

Requests for Production Nos. 21, 25, and 27 request:

> **Your itemized profit and loss report statements for the years 2012 to the present.**
>
> **Invoices and/or bills submitted to your customers for the work performed by Plaintiffs.**
>
> **All inventories and documents relating to the purchase of the parts, supplies, equipment, and machinery owned by you.**

In response, Defendant offers boilerplate objections and fails to identify whether any responsive documents exist. *See* Exhibit B at pages 10-11 (App. 09 – App. 24).

The second prong of the Fifth Circuit's economic realities test is the extent of the investments of the alleged employer. *Thibault*, 612 F.3d at 846. This factor examines the type of capital investment a putative employer has in the business compared to the investment made by his putative employee. *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1052 (5th Cir. 1987). The amounts that Defendant spends on items like labor, equipment, and overhead is directly relevant to its investment in the business. *See Bobbit v. Broadband Interactive, Inc.*, 2013 WL 5720329 (M.D. Fl. Oct. 21, 2013) (noting that it was instructive that 84% of the business's

revenue came from labor performed by alleged independent contractors); *Dole v. Snell*, 875 F.2d 802, 810 (10th Cir. 1989) (comparing independent contractors' investment in their tools to employers' business investments, including rent, advertising, operating expenses, labor, supplies, and equipment); *Real v. Driscoll Strawberry Assocs., Inc*., 603 F.2d 748, 755 (9th Cir. 1979) (examining employer's investment in land and heavy machinery).

Documents responsive to these requests for production and interrogatories are relevant to the relative investment of flow testers and Defendant. Defendant's profit and loss statements will show how much Defendant spends of relevant items like labor, equipment, overhead, and advertising. Defendant's invoices or bills for labor go to the amount of revenue Defendant receives from its flow tester workforce. Defendant's inventories or invoices for equipment go to the value of the well testing equipment and heavy machinery that Defendant provides on its work sites. These documents will show that Defendant generates significant revenue by selling or leasing equipment to its customers. These documents will also likely illustrate the size and purpose of the equipment provided by Defendant, and its investment in the industrial equipment used for its flow testing operations. Plaintiff will argue that the Defendant's investment in these items far exceeds the Plaintiff's investment in the value of the simple hand tools he provided to do his job. Indeed, the documents requested will likely reveal that the value of the equipment Defendant provides for the flow testers to complete their work exponentially exceeds the investment in the tools an individual flow tester must provide.

Additionally, discovering Defendant's profit and loss statements bear directly on another factor of the economic realities test – the extent to which the work is an integral part of the alleged employer's business. *Broussard*, 789 F.2d at 1160 (5th Cir. 1986) (economic realities test examines "whether the work is an integral part of the business of the employer"). The total

value Defendant charges its customers for labor goes directly to how integral the labor of the flow testers is to Defendant's overall business model. Invoices, bills, and other documents responsive to the above requests are critical to this analysis.

At the parties' meet and confer, Plaintiff's counsel offered to narrow these requests in order to make them less burdensome for Defendant. Plaintiff also suggested entering into a protective order to the extent Defendant is worried about the disclosure of confidential and proprietary information. Defendant rejected these proposals, and stated that it will not produce the documents. Therefore, the Court should order Defendant to perform a thorough search of its records and produce any documents responsive to Requests for Production 21, 25, and 27. Plaintiff is entitled to these highly relevant documents. The Court should also award Plaintiff its fees and costs in bringing this Motion.

**3. Defendant's Contracts with the Oil and Gas Companies for Whom Plaintiff Performed Work (Request 23).**

Request for Production No. 23 requests:

> **All contracts between you and your customers in effect from 2012 to the present.**

In response, Defendant offers boilerplate objections without identifying whether responsive documents exist. *See* Exhibit B at page 10 (App. 09 – App. 24).

Defendant's contracts with its customers goes directly to the first factor of economic realities test – the degree of control exercised by the purported employer. *Thibault*, 612 F.3d at 846 (5th Cir. 2010). Defendant provides a turnkey solution for flow testing services to its customers, which are oil and gas companies such as Matador Resources Company. A customer such as Matador Resources Company describes to Defendant what it hopes to accomplish in the field, and Defendant provides the equipment and labor force to accomplish the customer's goals.

This includes selling or leasing large industrial flow testing equipment such as separators, sand traps, trash catchers, choke manifolds, light plants, gauges, and pipes. Together with the equipment, Defendant also supplies the services of its flow testers, who use the equipment in performing the flow testing work.

As is the practice and custom in the flow testing industry, Defendant's contracts with its customers are replete with requirements that control exactly how the flow testers are to perform their jobs. Often times, the customer specifies that a flow tester must fill out a job safety report, how often a flow tester must file a report, and even dictates the format of the report. The customer describes the schedule it desires a flow tester to work. The customer dictates the equipment on the field. The customer requires a flow tester to adhere to narrowly promulgated safety protocols. The customer passes this information to Defendant, and it becomes Defendant's responsibility to ensure that its flow testers follow the customer's rules and procedures.

When a defendant requires workers to follow specific demands, "even if those demands are driven by customer needs, workers cannot be said to exercise such a degree of control that they stand as separate economic entities." *Trahan v. Honghua Am., LLC*, No. CIV.A. H-11-2271, 2013 WL 2617894, at *6 (S.D. Tex. June 10, 2013) (citing *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008). The fact that Defendant's customers imposed these requirements does not immunize Defendant from liability. "The economic reality inquiry requires us to examine the nature and degree of the alleged employer's control, not why the alleged employer exercised such control. Business needs cannot immunize employers from the FLSA's requirements. If the nature of a business requires a company to exert control over workers . . . then that company must hire employees, not independent contractors." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1316 (11th Cir. 2013).

Defendant's contracts with its customers will likely reveal that the customers require Defendant to instruct its flow testers on the specific procedures and specifications on how to perform their work. Furthermore, the documents themselves likely make reference to who is responsible for tax withholding--Defendant or its customer—and who has the right to dictate the work conditions. Additionally, these documents will yield the identities of fact witnesses who will have relevant information about the conditions of Plaintiffs' employment.

The contracts Defendant has with its customers are highly relevant to the economic realities test. Plaintiff offered to narrow the request to the specific years that Plaintiff worked (2012 and 2013), but Defendant refused and stated unequivocally that it will not produce the documents. Plaintiff advised that it has no other option than to pursue a motion to compel. Therefore the Court should compel Defendant to produce all documents responsive to Request for Production 23, and award Plaintiff costs and fees in preparing this Motion.

4. **Policies and Procedures Applicable to Defendant's Flow Testers (Requests 7, 8, 9).**

Requests for Production No. 7, 8, and 9 request:

> **All policies, procedures, handbooks, and instructions that applied to your contractor and employee flow hands, including all company rules applicable to flow hands. This includes all policies and procedures that may have come from your customers.**
>
> **All safety rules and/or materials that apply to your contractor and employee flow hands, regardless of whether you drafted them or a separate entity drafted them. This includes all safety rules and/or materials that may have come from your customers.**
>
> **All written policies that pertain to payroll, method of pay, bonuses, deductions, reimbursements, and overtime pay**.

In response, Defendant objects without identifying whether responsive documents exist. *See* Exhibit B at page 5 (App. 09 – App. 24).

9

The policies, procedures, and rules that Defendant required its flow testers to follow goes directly to the level of control Defendant maintains over its flow testers. *See Thibault*, 612 F.3d at 846 (first factor of economic realities test is the degree of control exercised by the purported employer). For example, the following is a non-exhaustive list of common instructions that companies such as Defendant frequently give to its flow testers, such as Plaintiff: the timing and procedure for take well measurements, the procedure for sampling sand traps, creating reports in a standard format, submitting reports to a specific contact list, conducting hourly checks for leaks, assisting well personnel with repairs, ensuring water is flowing correctly, measuring water level hourly, reporting any leaking chokes, controlling well flow at the directed rate, abiding by drug and alcohol abuse policies, and procedures for taking moisture samples if directed by the well operators. Additionally, these documents will show the type of duties the flow testers performed, the hours they were called upon to work, and how they were paid. The requirements of the flow testers' employment is clearly relevant to a lawsuit focused on the factual setting of Plaintiff's employment.

Defendant's main objection is that it should not be required to produce documents "regarding other flow hands." *See* Exhibit B at page 5 (App. 09 – App. 24). Defendant contends that the majority of its flow testers were classified as employees, and Plaintiff was one of very few who was classified as an independent contractor. However, whether different rules applied to contractor and employee flow testers is relevant to why Plaintiff was classified differently than the rest of Defendant's flow tester workforce. Therefore any policies and procedures that applied to other flow testers is relevant and discoverable to Plaintiff's claims.

Moreover, as detailed in the Declaration of Christopher Coker, Plaintiff was treated in the exact same way as the other flow testers. *See* Exhibit D, Coker Decl., at ¶¶ 2-5. (App. 28 – App.

29). He was required to follow the same rules, policies, and procedures, his job duties were the same, his work schedule was set by Defendant's supervisors, he was required to attend the same trainings, he was required to submit weekly timesheets like the employees, he was required to request time off in advance, and he was subject to termination at will by Defendant – just like the employee flow testers. *Id.* Therefore any policies and procedures that were required of "other flow hands" were also applicable to Plaintiff. These documents are thus directly relevant to the level of control that Defendant exerted over Plaintiff.

Defendant also objects that it should not produce the documents because no class has been certified. Regardless of whether this proceeds as a class case, or a single-plaintiff case, the documents are relevant to the factual setting of Plaintiff's employment. The Court should compel Defendant to produce any documents responsive to Requests for Production 7, 8, and 9.

5. **Job Safety Analysis Reports Plaintiff Completed While on the Job (Request 15).**

Request for Production No. 15 requests:

> **All forms, including but not limited to invoices, job safety analysis reports, gauge measurement tables, etc., provided to contractor or employee flow hands.**

In response, Defendant offers boilerplate objections and points to the two documents that it produced, which are unresponsive to the request. *See* Exhibit B at page 8 and documents bates labeled OER/Coker 00001, 00086-87 (App. 09 – App. 24).

As Mr. Coker states in his attached declaration, he and other flow testers were required to fill out daily job safety analysis reports. *See* Exhibit D, Coker Decl., at ¶ 6 (App. 28 – App. 29). These daily reports were sent via email to Defendant. *Id.* at ¶ 7. These documents will show the type of duties the Plaintiff performed, and the hours he was called upon to work. *Id.* at ¶ 6. Whether other flow testers were required to fill out the same form, in the same manner (i.e.,

required to take certain hourly measurements and fill out reports every day) also goes the level of control Defendant exerted over Plaintiff, and how similar his job duties were to the properly classified employee flow testers. Therefore these requests are tailored to lead to relevant factual information. The Court should compel production of documents responsive to Request for Production 15.

6. **Communications between Plaintiff and Defendant (Request 28).**

Request for Production No. 28 requests:

> **Copies of all communications, including emails and text messages, sent by you to Plaintiffs, or received by you from Plaintiffs.**

In response, Defendant points to a single email that was sent from Defendant to Mr. Coker's personal yahoo.com email address. *See* Exhibit B at page 11 (App. 09 – App. 24).

Plaintiff testifies that Defendant gave Plaintiff a company email address while he worked for Defendant. *See* Exhibit D, Coker Decl., at ¶ 7 (App. 28 – App. 29). Defendant required Plaintiff to communicate via this email address, send his weekly timesheets to Defendant via this email address, and send in daily reports to this email address. *Id*. Yet, Defendant has not produced any of these emails. After Plaintiff stopped working for Defendant in 2013, his access to this email address was removed, and he no longer has access to the emails. At the parties' meet and confer, Defendant's counsel could not answer whether a good faith search of Defendant's email servers was conducted for emails to and from Plaintiff's company email address.

Plaintiff's communications with Defendant are undeniably relevant. Defendant has an obligation to preserve the emails, as they contain information regarding Plaintiff's employment. Defendant has the duty to conduct a good faith search of its email servers, as well as any backup

servers or other sources where the emails may be kept. The Court should order Defendant to properly search, preserve, and produce documents responsive to Request for Production 28.

### III. PLAINTIFF IS ENTITLED TO ITS FEES AND COSTS FOR PURSUING THIS MOTION

Federal Rule of Civil Procedure 37(a)(5)(A) provides that the Court "must, after giving opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising the conduct, or both to pay the movant's reasonable expenses in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

No exceptions to the rule apply here. First, Plaintiff conferred at length in good faith with defense counsel over the telephone on December 9, 2015. Defense counsel stated explicitly that it's client will not produce documents responsive to many of the requests outlined above, and rejected Plaintiff's offers to compromise by narrowing certain requests and entering a protective order. Plaintiff's counsel advised defense counsel that it would be left with no choice but to file a motion to compel the documents that Defendant outright refused to provide. On December 22, 2015, Plaintiff's counsel attempted to further meet and confer and requested supplemental discovery responses from Defendant. Defendant has not responded to Plaintiff's requests. Second, as outlined above, Defendant's boilerplate objections, incomplete answers, and demonstrably false answers, were not substantially justified. Third, no other circumstances make an award unjust.

Accordingly, Plaintiff is entitled to recover its reasonable expenses and attorney fees from Defendant or its counsel for having to bring this motion to compel. *Agnew v. FTS International Services, LLC*, Case No. 4:15-cv-00052-O (N.D.Texas filed Jan. 22, 2015), Dkt. 68

(March 16, 2015 Order granting request for reimbursement of attorney fees incurred on motion to compel in FLSA case) (O'Connor. J.).

## IV. CONCLUSION

For the forgoing reasons, the Court should grant Plaintiffs' Motion and Compel Defendant to supplement its responses to Plaintiff's Requests for Production Numbers 7, 8, 9, 15, 19, 21, 23, 25, 27, and 28.

Respectfully submitted,

KENNEDY HODGES, LLP

By: /s/ *Galvin B. Kennedy*
    Galvin B. Kennedy
    State Bar No. 00796870
    Federal ID No. 20791
    gkennedy@kennedyhodges.com
    711 W. Alabama Street
    Houston, TX 77006
    Telephone: (713) 523-0001
    Facsimile: (713) 523-1116

**ATTORNEY IN CHARGE FOR PLAINTIFF
& CLASS MEMBERS**

**OF COUNSEL:**

Udyogi A. Hangawatte
Texas Bar No. 24094698
Federal ID No. 2488120
uhangawatte@kennedyhodges.com
KENNEDY HODGES, LLP
711 W. Alabama Street
Houston, Texas 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2015, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the Court's CM/ECF filing system.

/s/ *Galvin B. Kennedy*
Galvin B. Kennedy

**CERTIFICATE OF CONFERENCE**

I hereby certify that pursuant to Federal Rules of Civil Procedure 37(a)(2)(A) and Local Court Rule CV-7, on December 9, 2015, counsel for Plaintiff conferred with counsel for Defendants at length via telephone about the relief sought through this Motion. Defendants are opposed to the relief sought herein. On December 22, 2015, Plaintiff's counsel attempted to further meet and confer and requested supplemental discovery responses from Defendant. Defendant has not responded to Plaintiff's requests.

/s/ *Udyogi A. Hangawatte*
Udyogi A. Hangawatte